Beatty, Appellant, *v.* State Board of Undertakers.

Argued May 21, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused August 6, 1945.

*Fred B. Trescher,* with him *Kunkle, Trescher & Snyder, Hull, Leiby & Metzger,* and *Scott S. Leiby,* for appellant.

*Abraham J. Levy,* Special Deputy Attorney General, with him *Harrington Adams,* Deputy Attorney General and *James H. Duff,* Attorney General, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, June 29, 1945:

Section 10 of the Act of June 10, 1931, P. L. 485, provides that when a license has been refused, suspended or revoked by the State Board of Undertakers there is a right of appeal to the Court of Common Pleas of Dauphin County, but *"The action of said court shall be final".* The scope of our review on appeal is accordingly limited to a consideration of the jurisdiction of the court below and the regularity of the proceedings: *Grime v. Department of Public Instruction,* 324 Pa. 371, 188 A. 337; *State Board of Undertakers v. Frankenfield,* 329 Pa. 440, 198 A. 302. In the present case neither the jurisdiction nor the regularity of the proceedings is challenged.

Appellant, James McBride Beatty, was registered as a student apprentice, under the preceptorship of John M. Albright, a licensed undertaker in Westmoreland County. During the latter's illness Beatty arranged for the burial of one Bertha Mae Williams. The body was embalmed, dressed, and placed in a casket selected by decedent's family. Beatty officiated as the undertaker at the funeral; the casketed body was taken to the cemetery where a minister conducted religious services and then the relatives and friends departed. Within a half hour thereafter Beatty returned to the cemetery and had the casket brought back to the Albright establishment, where, five days later, the body was removed, stripped of

the dress in which it had been laid out, wrapped in a blanket, placed on a bed of excelsior in a rough box the lid of which was then nailed down, and so returned to the cemetery and buried—all without the consent or knowledge of the family of the deceased. The casket in which the body had originally been laid out, and in which it had lain for eight days, was put back in Albright's stock and subsequently used by Beatty for another corpse. The reason for these highly unorthodox proceedings was that Thomas H. Williams, the husband of the decedent, was not able to pay cash for the funeral charges and Beatty was unwilling to accept from him a proposition of instalment payments. Had he, under such circumstances, refused before the funeral to furnish the casket selected by the family he would scarcely have been subject to just criticism. But because of the deception which he practiced in making the change after the relatives and friends had departed from the grave, and the lack of respect he manifested in caring for the dead, both the State Board of Undertakers and the Dauphin County Court found that he was guilty of professional misconduct, and accordingly the court revoked his registration as a student apprentice.

Appellant insists that there is no statutory authorization for such a revocation, pointing out that section 8 of the Act of 1931 gives to the Board power to "refuse to grant, refuse to renew, suspend or revoke a license of any applicant or licensee" for, inter alia, "gross incompetency, negligence or misconduct in the carrying on of such business or profession," but says nothing about the revocation of the registration of a student apprentice. It is clear, however, that the authority to "revoke a license of any applicant or licensee" impliedly extends to such a registration. It is wholly inconceivable that when the legislature empowered the Board to revoke the license of an undertaker for misconduct it did not inferentially mean thereby to cover the case of the registration of a student apprentice, for other-

wise, no matter of what enormities such apprentice might be guilty, he must be allowed to continue his apprenticeship and go on to an examination for license as as undertaker, to the likely detriment of the public and utter disregard of the purposes for which the statute was enacted.

As to what constitutes "misconduct" in the carrying on of the business of undertaking, a large measure of discretion must necessarily be left to the State Board of Undertakers in the first instance and to the Court of Common Pleas of Dauphin County on appeal, for misconduct may consist of the breach of any of the generally accepted canons of ethics and propriety governing the respectful and reverential burial of the dead. While, as already stated, this Court is precluded from considering the merits of the controversy, we have no hesitation in expressing the opinion that the court below was justified, under the evidence, in finding appellant guilty of misconduct within the meaning of the statute and therefore in revoking his registration as a student apprentice.

Order affirmed; appellant to pay the costs.

———

DISSENTING OPINION BY MR. JUSTICE JONES:

The opinion of the Court states that "In the present case neither the jurisdiction nor the regularity of the proceedings is challenged." As I understood the oral argument of appellant's counsel and read his brief, his entire attack consists of his contention that the statute under which the State Board of Undertakers operates confers no jurisdiction on the Board to enter an order such as the one which gave rise to the proceeding now under review. As I agree with the appellant's contention, I have no alternative but to dissent from the action of the Court.

The pertinent statute is the Act of June 10, 1931, P. L. 485, 63 P.S. §478a et seq. which, as its title states, requires and regulates "the examination, licensure, and

registration of persons, and registration of corporations, engaging in the care, preparation, and disposition of the bodies of deceased persons; and providing penalties." The administration of the Act is committed to the State Board of Undertakers. As defined by the Act, the term "board", as used therein, "mean[s] the State Board of Undertakers of this Commonwealth" which was created by the Act of June 7, 1895, P. L. 167, 71 P.S. §1161.

The appellant was *registered* under the Act of 1931, cit. supra, with the State Board of Undertakers as a "student apprentice". That term is specifically defined by Sec. 1 (d) of the Act as meaning "any person operating under or with an undertaker for the purpose of learning such business or profession to the end that he *may become* a licensed undertaker." (Emphasis supplied). Section 4 of the Act provides for the registration and *licensing* of undertakers.

Section 8 of the Act provides that "The board, by a majority vote thereof, may refuse to grant, refuse to renew, suspend or revoke a *license* of any applicant or licensee for the following reasons: . . . ." (Emphasis supplied). Then follow eight lettered paragraphs, each of which specifies grounds for an exercise by the Board of the power conferred upon it by Section 8 for the performance of the duty therein imposed.

The Board proceeded against the appellant under Section 8 for the revocation of his *registration* as a "student apprentice", charging him specifically with offenses specified in sub-paragraph (e) of Section 8 as follows: "Gross incompetency, negligence or misconduct in the carrying on of such business or profession." The appellant did not hold nor had he ever held a *license* from the Board as an undertaker.

A reading of Section 8 at once discloses that the power thereby conferred upon the State Board of Undertakers is a power to refuse to grant or renew or to suspend or revoke a *license* which, under the Act, only a qualified undertaker may hold. Nowhere does Section 8 make any

reference to the registration applicable to the case of a "student apprentice". Nor is there any express authority elsewhere in the Act for the revocation of the registration of a "student apprentice". The majority opinion perceives this but holds that "the authority to 'revoke a license of any applicant or licensee' *impliedly* extends to such a registration." (Emphasis supplied). But, Section 8 is penal and, being so, we may not extend it by implication beyond its precise meaning: *Commonwealth ex rel. v. Krickbaum,* 199 Pa. 351, 355-356, 49 A. 68; *Trainer v. Wolfe,* 140 Pa. 279, 289, 21 A. 391.

It is wrong for a court, by construction, to amend and thus extend a statute. And, that is particularly so where the statute involved is penal. No matter how desirable it may be, as a matter of governmental policy, to have registrations of student apprentices to undertakers made subject to cancellation or revocation for cause at the instance of the State Board of Undertakers, any provision to that end is for the legislature to supply when it sees fit so to do. It seems clear that it did not do it by Section 8 of the Act of 1931, cit. supra, under which the Board purported to act in this case.

I should, therefore, reverse the order of the court below and direct that the order of the State Board of Undertakers, revoking the appellant's registration as a student apprentice, be vacated.

Mr. Justice PATTERSON joins in this dissent.