## State Board of Funeral Directors *v.* William Sirlin.

Argued January 5, 1971, before Judges KRAMER, MENCER and ROGERS, sitting as a panel of three.

*Robert E. Woodside*, with him *Woodside, Woodside and Zwally*, for appellant.

*Walter W. Wilt*, Assistant Attorney General, with him *Fred Speaker*, Attorney General, and *Marvin I. Block*, Assistant Attorney General, for appellee.

OPINION BY JUDGE ROGERS, January 25, 1971:

Pursuant to the provisions of the Funeral Director's Law of January 14, 1952, P. L. (1951) 1898, Section 12, 63 P.S. 479.12, William Sirlin (hereinafter called appellant) appealed from an adjudication and order of the State Board of Funeral Directors (hereinafter called Board) to the Court of Common Pleas of Dauphin County. Jurisdiction of the appeal having been vested in the Commonwealth Court by Section 403(1) of the Appellate Court Jurisdiction Act of 1970, P. L. (1970), Act No. 223, approved July 31, 1970, 17 P.S. 211.403(1), the record has been transferred here for disposition.

The citation charged appellant with "gross incompetency, negligence or misconduct in the carrying on of the profession" and "violation of or noncompliance with the provisions of . . . the rules and regulations of

the board" which offenses separately and independently provide grounds for the suspension or revocation of appellant's license under the Funeral Director's Law of 1952, January 14, P. L. (1951) 1898, Section 11(5) (6), 63 P.S. 479.11(5)(6). The rule allegedly violated is 16.7 of the Board as follows: "After having been called upon to remove the remains from the scene of an accident or in comparable circumstances, the funeral director shall incur no expense beyond that for the removal, unless after reasonable effort the family of the deceased cannot be contacted. Once such contact is established, the funeral director in the above circumstances shall, in the quickest and most expeditious manner, release the remains to the funeral director of the family's choice."

The adjudication and order appealed from made February 14, 1968 suspended appellant's license to practice funeral directing issued July 1, 1924, for a period of one year. This appeal was taken and a supersedeas granted before the suspension became effective.

Although the testimony contains discrepancies as to details caused by the passage of fifteen months from the time of the questioned incident until the Board's hearing, the material facts are not in dispute.

In October 1966, Marion Edna Remaly Freeman, ill and subsisting on public welfare, lived alone in rooms in Sheffield Street on the North Side of Pittsburgh. Her marriage to one Edward Freeman was apparently putative, having been bigamous on his part. Her former married name was Remaly and there were two children of the Remaly marriage. On Friday, October 21, 1966, Mrs. Freeman delivered certain insurance policies on her life to Margaret K. Sperling, an employee of a funeral establishment named Sperling Funeral Home, Inc., for the purpose of effecting a change of beneficiary. She had some days previously told the

handyman at her rooming house, one Quinten Seals, that she was friendly with a *Mrs. Sirlin* and that *Mrs. Sirlin* had told her to bring her "insurance policies and books out to her."

On Saturday morning, October 22, 1966, Seals heard moans from Mrs. Freeman's rooms, entered and found her "in a trance." Later Seals called police who took Mrs. Freeman to the Allegheny General Hospital where at 6:15 o'clock p.m. she was pronounced dead. Her body was then removed to the city coroner's morgue.

Later Saturday evening the police returned to the Sheffield Street address and questioned Seals concerning Mrs. Freeman in an effort to ascertain her identity and relatives. On the same evening a telephone call was received at the appellant's funeral home. The caller identified himself as a police officer, informed appellant's secretary that a Mrs. Remaly was dead at Allegheny General Hospital and that appellant "had arrangements on her." Appellant, a licensed funeral director for 42 years, had in the past buried at least two persons named Remaly. Upon being advised of the police call, Sirlin made a telephone call to the hospital and learned that the body was at the morgue.

On Sunday, appellant went to the morgue, executed a receipt and took the body to his funeral home. The delivery of the body to the appellant, a funeral director, upon his request and receipt and without reference to decedent's family, as yet in this case unknown, was in accordance with the then practice of the morgue. Sirlin then went to Mrs. Freeman's rooms, and there in Seals' presence examined papers, later taking some to his place of business. From this source he learned that decedent's next of kin was a son Robert Remaly, Jr. whom he notified of his mother's death. Remaly went to appellant's funeral home and appellant told

him not to concern himself over costs and that he, appellant, would bury Mrs. Freeman for fifty dollars. Appellant delivered to the son the papers taken from the rooms.

On the following morning, Monday, Robert Remaly, Jr. spent some time looking for Edward Freeman whom he thought might have his mother's insurance policies. Unsuccessful in this search he returned to appellant's funeral home where he learned that his wife had been trying to reach him by telephone. He called his wife and learned that the policies of insurance were at the Sperling Funeral Home, Inc. Remaly then went to Sperling's and there decided to have his mother's funeral directed by them. The appellant asked for and was paid without objection the sum of sixty dollars for having embalmed the body.

Sperling Funeral Home, Inc. directed the funeral at a cost of $594.45.

This court is required to approve the Board's adjudication unless it shall find, inter alia, "that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." Administrative Agency Law of 1945, June 4, P. L. 1388, Section 44, 71 P.S. 1710.44. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and must be "more than a scintilla" and must "do more than create a suspicion of the existence of the fact to be established." *Pennsylvania State Board v. Schireson*, 360 Pa. 129, 61 A. 2d 343 (1948). The Board's findings in this case do not meet that test. They are, pertinently, that

"2. The Respondent . . . did remove from the . . . morgue, by means of false representations and without authorization of the next of kin, the remains of one Marion Freeman . . .

3. The Respondent . . . did improperly, and without authorization of the next of kin, enter the premises of the deceased and did improperly and wrongfully remove . . . personal effects . . .

4. The Respondent did prepare and embalm . . . without either seeking or obtaining authorization . . . from the deceased's next of kin.

5. The Respondent . . . did charge the funeral home subsequently selected by the deceased's next of kin the sum of $60 for the aforementioned preparation and embalming."

Findings employing such phrases as "by means of false representations" and "improperly and wrongfully" without specifying the allegedly false representations or revealing the nature of alleged improprieties and wrongs have been held to be insufficient and no foundation for conclusions. *State Board of Private Business Schools v. Thomasson*, 66 Dauphin 110 (1954). In fact the appellant made no representations. He responded to a message from police authorities, obtained the body from the morgue by perfectly regular means, and went to the deceased's home for a legitimate purpose. The caretaker had been told by Mrs. Freeman that *Mrs. Sirlin* was a friend to whom she had delivered insurance policies. It is reasonable to infer that Seals gave this intelligence to the police and that this occasioned their call to appellant. The papers taken from the rooms were promptly delivered to the deceased's son. If of any significance in this case, they were available to the Board and could have been, but were not, produced.

As for the acts appellant was alleged to have done without authorization of next of kin, the removal of the body from the morgue and the entering of the deceased's premises were accomplished before appellant's efforts had located the next of kin. Appellant did in-

deed embalm the remains. Mrs. Freeman died Saturday. Her son visited and spoke with appellant on Sunday evening when, as he knew, his mother's body was at the appellant's funeral establishment. On Monday, the son engaged in a search for his stepfather, visited appellant, and visited the Sperling establishment before deciding to engage Sperling's Funeral Home, Inc. as the funeral director. That appellant had at this time, surely a day and a half after the death and following two visits from the deceased's son, prepared the remains for burial is not substantial evidence that appellant incurred expense in violation of Rule 16.7. If appellant inferred that he had consent to perform this necessary act, that inference was reasonable. For the rest, appellant readily delivered the body to the Sperling Funeral Home and the son just as readily agreed to pay appellant's charges.

Having concluded that the adjudication and order of the Board was not supported by substantial evidence, we make the following

## ORDER

AND NOW, January 25, 1971, the appeal of William Sirlin from the adjudication and order of the State Board of Funeral Directors, made February 14, 1968, is sustained and said adjudication and order is set aside.