565 A.2d 520

**Emil J. CIAVARELLI, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, STATE BOARD OF FUNERAL DIRECTORS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 5, 1989.

Decided Nov. 3, 1989.

James P. Georghegan, Georghegan & Ozorowski, for petitioner.

Jackie C. Wiest, Counsel, State Bd. of Funeral Directors, with her, Joyce McKeever, Chief Counsel, Bureau of Professional and Occupational Affairs, and Velma A. Boozer, Chief Counsel, Dept. of State, for respondent.

Before CRUMLISH, Jr., President Judge, and CRAIG (P.) and COLINS, JJ.

COLINS, Judge.

Emil Ciavarelli (petitioner) appeals an order of the State Board of Funeral Directors (Board) which suspended petitioner's funeral director's and funeral Supervisor's licenses for two (2) years and assessed a One Thousand Dollar ($1,000.00) fine. We reverse.

The Board issued a three count complaint and order to show cause charging petitioner with violations of the Funeral Director Law (Act), Act of January 14, 1952, P.L. (1951) 1898, *as amended,* 63 P.S. §§ 479.1—479.20 and certain Board regulations that describe examples of unprofessional conduct including gross misconduct. Count I of the complaint alleged that the petitioner was guilty of violating Sections 11(a)(5) and 11(a)(9) of the Act.[1] Count II of the complaint alleged that the petitioner violated Section 11(a)(6)[2] of the Act by attempting to influence a family's choice of a funeral director as prohibited by the Board's regulations.[3] Count III of the complaint again alleged that

---

1. 63 P.S. §§ 479.11(a)(5) and (9). These Sections state:
   (a) The board, by a majority vote thereof, may refuse to grant, refuse to renew, suspend or revoke a license of any applicant or licensee, whether originally granted under this act or under any prior act, for the following reasons:

   . . . . .

   (5) Gross incompetency, negligence or misconduct in the carrying on of the profession.

   . . . . .

   (9) Gross immorality.

2. 63 P.S. § 479.11(a)(6). This Section states:
   (a) The board, by a majority vote thereof, may refuse to grant, refuse to renew, suspend or revoke a license of any applicant or licensee, whether originally granted under this act or under any prior act, for the following reasons:
   (6) Violation of or non-compliance with the provisions of this act or the rules and regulations of the board.

3. 49 Pa.Code § 13.207 states:
   Any funeral director who finds that he is involved in a situation where a family group is divided concerning the choice of a funeral director shall withdraw until the family has made a final decision.

the petitioner was guilty of violating Section 11(a)(6) of the Act by defaming another funeral director as prohibited by the Board's regulations.[4] The Board held a hearing on March 7, 1988, and issued its order on December 7, 1988, finding petitioner guilty on Count I, dismissing Counts II and III, and imposing the penalties mentioned above. This appeal followed.

This litigation has its genesis in a December 15, 1986, natural gas explosion in Springfield Township, Montgomery County. This explosion destroyed a residence resulting in the death of three individuals. The Township police summoned Father Steven Guiliano to the scene of the explosion at the request of one of the surviving family members. The bodies after being anointed were then transported to the petitioner's funeral home by the petitioner's son under a refrigeration rental arrangement with the County, since the coroner's office had no morgue.

Carl Gray a family friend was asked by the surviving family members to arrange the funerals for the deceased. While paging through the telephone book, Mr. Gray asked Father Guiliano if he knew of any funeral directors that could handle the burials. The priest responded that he did not care which funeral home was used and, since the telephone book was opened to the page with the May Funeral Home's advertisement, that, in his expertise, they did a good job. Mr. Gray then asked the priest to contact the May Funeral Home to handle the arrangements.

Under such circumstances, any attempt by the funeral director to influence the judgment of the family shall be unprofessional conduct.

**4.** 49 Pa.Code § 13.218 states:
It shall be unprofessional for a funeral director to make or suffer to be made any comment or public announcement in defamation of another funeral director. Such defamation shall be deemed to exist if there is reference to conduct of another director; inability to perform contracts or render adequate service; questionable credit rating; adequacy of staff, facilities, and equipment; business methods; prices, values, and terms; or any other reference or comment that may have the tendency or effect of disparaging other funeral directors.

After the explosion, a cousin of the deceased, who was a medical doctor, arrived from out of town and went to the petitioner's establishment in an attempt to identify the bodies. Petitioner suggested that this would not be a good idea because the bodies were burned beyond recognition. Petitioner then allegedly pulled Father Guiliano aside and asked him why he was recommending the May Funeral Home. Father Guiliano denied recommending the May Funeral Home. Father Guiliano testified that the petitioner "made the statement that because I was Italian that I should think of him because we had to stick together." Father Guiliano continued that the petitioner "proceeded to tell me that he thought I had something against him and that he was very upset and why didn't I ... not recommend him, why would I recommend May instead."

Petitioner then allegedly told the doctor that it would be cheaper for the petitioner's establishment to handle the burials because the bodies would not have to be transported to May's funeral home. The family then decided to use the petitioner's funeral home. Father Guiliano informed Mr. May that petitioner's establishment would be used. Mr. May then became upset and Father Guiliano informed the family of this, so the family decided to stay with Mr. May.

Father Guiliano alleged that his secretary received an irate telephone call from the petitioner admonishing him for recommending funeral homes. In response, the priest wrote to petitioner a few weeks later stating this was not true. Additionally, a copy of this letter was sent to Mr. May who, in turn, forwarded a copy to the Board which commenced this proceeding. Also, the record does not reveal how, but copies of this letter were circulated to other funeral directors in the area.

The Board made the following findings of fact:

5. On December 15, 1986, Dr. Teofila Gamo ... verbally authorized Carl Gray to arrange funeral services for the decedents. (N.T. 13, 15, 81).

6. On December 15, 1986, Father Steven Guiliano, acting under the direction of Carl Gray, authorized Harry May,

Supervisor of the May Funeral Home, to arrange funeral services for the decedents. (N.T. 18).

7. On December 15, 1986, Father Steven Guiliano and Dr. Willie Ferandos arrived at Respondent's funeral home to attempt to identify the bodies of the decedents.

8. On that occasion, Respondent escorted Father Steven Guiliano to a private office at Respondent's funeral home, and accused Father Guiliano of recommending funeral homes, advised Father Guiliano that because he and Respondent were both Italian, they should stick together in regard to making the funeral arrangements, and threatened to report Father Guiliano to the Archdiocese for recommending funeral homes. (N.T. 19–21, 35–36).

9. On December 15, 1986, Respondent telephoned Father Steven Guiliano and advised the Father's secretary that Respondent was upset that Father Guiliano was recommending funeral homes, and further inquired as to why his funeral home would not be used. (N.T. 27).

10. On December 15, 1986, Respondent accused the funeral director handling the funeral arrangements for the decedents, Harry May, Supervisor of May Funeral Home, of having a deal with Father Steven Guiliano in regard to obtaining the funeral arrangements, and further called Mr. May an "asshole" without any provocation. (N.T. 41–44, 48).

From these findings of fact, the Board concluded, as a matter of law, that petitioner unjustifiably accused Father Guiliano of recommending a funeral home, because there was no factual basis for the accusations petitioner made, and that the statements made to Father Guiliano, Father Guiliano's secretary, and Harry May constituted gross misconduct under Section 11(a)(5) of the Act, 63 P.S. § 479.11(a)(5).

Petitioner maintains that: (1) that the record lacks substantial evidence to support the sanctions the Board imposed; (2) that the Board lacks authority to impose sanctions on a funeral director when neither the Act nor the Board's regulations specifically prohibit petitioner's con-

duct; (3) that the Board erroneously admitted a letter into evidence because the letter constituted inadmissible hearsay; and (4) that the penalty the Board assessed is unduly severe under the circumstances.

▆ Our scope of review is limited to a determination of whether the Board violated the petitioner's constitutional rights, committed an error of law, or based its conclusion on a material finding of fact that is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *State Board of Funeral Directors v. Sirlin*, 1 Pa. Commonwealth Ct. 126, 274 A.2d 235 (1971). Thus, we must consider whether the Board's findings support the conclusion that petitioner violated the Act and, if so, whether any material finding of fact is not supported by substantial evidence, i.e., whether there is legal support for the Board's conclusion that the petitioner's actions constituted gross incompetency, gross immorality, negligence, or misconduct in the carrying on of the profession.

▆ Section 11(a)(5)(9) of the Act states: "The board, by a majority vote thereof, may ... suspend or revoke a license of any applicant or licensee ... for the following reasons: Gross incompetency, negligence, or misconduct in the carrying on of the profession ... [or] gross immorality." 63 P.S. § 479.11(a)(5)(9).

The relevant regulations promulgated under the Act are found at 49 Pa.Code §§ 13.201–13.231. Section 13.201 states:

> Unprofessional conduct on the part of a funeral director, whether it be gross incompetency, negligence, or misconduct, shall be grounds for revocation, suspension, or refusal to issue or renew a license to a funeral director. The provisions of this chapter are examples of conduct which the Board considers unprofessional, but this shall not be considered all inclusive or limiting as to acts or deeds of unprofessional conduct or misconduct.

49 Pa.Code § 13.201.

The Board concluded that petitioner's conduct did not fit precisely into one of the examples listed in the regulations

of unprofessional conduct, yet determined that petitioner's conduct fell within the general terms of Section 11(a)(5) as gross misconduct.

Petitioner argues that the Pennsylvania Supreme Court's interpretation of the word "misconduct," as used in the Act, in *Beatty v. State Board of Undertakers*, 352 Pa. 565, 43 A.2d 127 (1945), limits the scope of conduct under the Act for which the Board may impose sanctions. In *Beatty*, our Supreme Court stated:

> As to what constitutes 'misconduct' in the carrying on of the business of undertaking, a large measure of discretion must necessarily be left to the State Board of Undertakers ... for misconduct may consist of the breach of any of the generally accepted canons of ethics and propriety governing the respectful and reverential burial of the dead.

*Id.*, 352 Pa. at 568, 43 A.2d 128.

Petitioner suggests that under this interpretation, the Act only applies to conduct specifically relating to the act of burial and treatment of the deceased, rather than to other aspects of the burial process. The petitioner testified that he released the bodies to the May Funeral Home upon receiving authorization from the Montgomery County Coroner's office and that he was not attempting to steal business from Mr. May, but was attempting to comply with the Coroner's requirement that he not release any bodies without the proper authorization. Additionally, the petitioner argues that the regulation he allegedly violated does not specifically proscribe his conduct.

"[I]t is well recognized that the courts should proceed with caution where the judgment of an administrative body properly interpreting its own regulation is at issue," *Hunt v. Pa. State Board of Funeral Directors*, 45 Pa. Commonwealth Ct. 324, 332, 405 A.2d 996, 1000 (1979) (citations omitted). Nevertheless, "[d]iscretion vested in administrative agencies must be exercised soundly. If administrative discretion is exercised arbitrarily or unreasonably, if the law is overridden or misapplied or if the judgment made is

manifestly inappropriate, courts will declare that the agency has abused its discretion and will set aside its action." *Edwards v. State Bd. of Funeral Directors*, 34 Pa. Commonwealth Ct. 249, 251, 383 A.2d 564, 565 (1978).

In the matter *sub judice*, the petitioner may have been unwise in his conduct; however, his conduct, as matter of law, does not rise to the level of misconduct to justify the penalty imposed by the Board. A review of the record indicates that it would be possible for a reasonable person to draw a subjective opinion that Father Guiliano was recommending the May Funeral Home. We caution to add that we are not holding that this is true, but only that the petitioner's formulation of a subjective belief cannot, in the instant factual milieu, be the basis for the revocation of petitioner's license. While we do not condone the manner in which the petitioner spoke to Father Guiliano, we believe that the record does not support the Board's conclusion that there were no facts of record so as to allow petitioner to form his own subjective opinion as to Father Guiliano's motivation.

The Board attempts to counter this argument by stating it was justified in its actions because it carefully reviewed the conflicting testimony of all the witnesses and determined the issue of credibility to be in favor of the Board. We agree with the Board that "[t]he existence of conflicting testimony does not lead to the conclusion that the findings are not supported by substantial evidence." *Gold v. State Board of Funeral Directors*, 93 Pa. Commonwealth Ct. 464, 467, 501 A.2d 356, 357 (1985). In *D'Anjolell v. State Board of Funeral Directors*, 3 Pa. Commonwealth Ct. 64, 280 A.2d 123 (1971), however, we held that "[t]he courts and the litigants are entitled to clear, precise and unambiguous statements of position from these quasi-judicial bodies. This is especially so where a citizen's professional pursuit is at stake." *Id.*, 3 Pa. Commonwealth Ct. at 69, 280 A.2d at 126. The regulation under which the petitioner's license was suspended is vague. This section is an all-encompassing regulation which allows the Board to

impose a sanction for any reason it sees fit. While this regulation has been interpreted in *Beatty* to apply to the respectful and reverential burial of the dead, we do not feel that the conduct of petitioner was grossly incompetent, negligent or immoral in this instance. Likewise, in the past, this Court has held that conduct alleged to have been violative of a statute, but not enumerated in that statute, cannot be the basis for a finding of grossly unprofessional conduct. *Tancredi v. State Board of Pharmacy*, 54 Pa. Commonwealth Ct. 394, 421 A.2d 507 (1980).[5]

The petitioner is a man with over 40 years service as a funeral director. Prior to this incident, he has had a stellar record with the Board, as well as an exemplary record of community involvement. The petitioner organized the Montgomery County Funeral Directors, at the request of the state agency, and also served as its first president. Moreover, petitioner has actively served in ten civic organizations. The record further reflects that the petitioner is held in high esteem by the Pastors of the Roman Catholic Churches in the area for his ever vigilant pursuit of professionalism in the handling of funeral arrangements. Petitioner's conduct may have been imprudent, but it does not, in light of the tragic circumstances surrounding this case, as well as his duty to the coroner's office, support a conclusion of gross misconduct, as a matter of law.

Accordingly, the order of the Board is reversed.[6]

This matter was argued before a panel consisting of Judge CRAIG, Judge COLINS, and Senior Judge KALISH. Due to the untimely death of Senior Judge KALISH, the case was submitted on the briefs to President Judge CRUMLISH, Jr., for his consideration as a member of the panel.

---

5. This Court remanded to the State Board of Pharmacy for review of the sanction of revocation. The sanction was reduced from revocation to suspension and this Court affirmed that order on appeal. *Tancredi v. State Board of Pharmacy*, 93 Pa. Commonwealth Ct. 387, 501 A.2d 702 (1985).

6. Because we have determined that the petitioner's action did not amount to a violation of the Act, this obviates the need to discuss the remaining issues.

## ORDER

AND NOW, this 3rd day of November, 1989, the order of the Pennsylvania State Board of Funeral Directors in the above-captioned matter is reversed.