**Thomas L. GEISEL, Petitioner,**

v.

**PENNSYLVANIA STATE BOARD OF FUNERAL DIRECTORS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 12, 2000.

Decided July 14, 2000.

J. Bruce Walter, Harrisburg, for petitioner.

Thomas A. Blackburn, Harrisburg, for respondent.

Before DOYLE, President Judge, and COLINS, J., McGINLEY, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., LEADBETTER, J.

SMITH, Judge.

Thomas L. Geisel petitions for review of the order of the State Board of Funeral Directors (Board) that levied a civil penalty of $1000 upon him pursuant to the Funeral Director Law (Law), Act of January 14, 1952, P.L. (1951) 1898, *as amended,* 63 P.S. §§ 479.1–479.20, and required that he successfully complete a course on professional ethics for funeral directors. The Board found that Geisel is a licensed funeral director and is the permanent supervisor of the Thomas L. Geisel Funeral Home, Inc. (Funeral Home) in Chambersburg, Pennsylvania. Geisel questions whether the Board's determination that he violated Section 11(a)(5) of the Law, 63 P.S. § 479.11(a)(5), which provides for Board action for gross incompetency, negligence or misconduct in the carrying on of the profession, is supported by substantial evidence and is a correct application of the law.

I

The Board found the following additional facts. Donna D. Lewis went to the Funeral Home on January 7, 1998 to make final arrangements for her husband, who passed away the day before. Geisel agreed to provide funeral director services to Lewis and to allow her to make payments pursuant to a payment plan. Geisel informed his employee Floyd N. Myers that a payment plan could be arranged for Lewis, and Myers executed a written agreement with Lewis for funeral goods and services, providing for a total charge of $2,324. The charge included $125 for the cremation of the decedent's body. Myers also showed

Lewis and her family a bronze urn and informed her that she could pay for the urn by paying $400 up front.

Lewis paid the $125 charge for cremation, and her husband's remains were cremated on January 9, 1998. On January 11 Lewis arrived at the Funeral Home for the funeral service with a brass urn, and she requested that her husband's remains be placed in that urn. Myers refused to place the cremains in the brass urn, stating that he could not seal it; however, he later informed a Board investigator that he also refused because Lewis had not purchased the urn from the Funeral Home. At Myers' suggestion the service proceeded with an empty urn belonging to the Funeral Home. After the service, Myers would not permit Lewis to leave the Funeral Home with her husband's cremains unless she paid one half of the total remaining cost of funeral services. He later admitted to an investigator that he requested that Lewis pay between $1,100 and $1,500 to cover various costs. There is no dispute that the record supports the above findings; although Myers and Geisel did not expect to be fully paid, the record does not show that Geisel offered to perform funeral services gratuitously.

The day after the service, Lewis contacted an attorney to assist in obtaining her husband's cremains. The attorney sent a letter to the Funeral Home, and on January 16, 1998, the Funeral Home left a message for Lewis directing her to come to the Funeral Home by 4:00 p.m. to pick up the cremains, which she did. On April 28, 1998, the Board issued a Notice and Order to Show Cause alleging that Geisel violated Section 11(a)(5) of the Law on two occasions by failing to supervise his employee properly.[1] Following a formal hearing on the misconduct charge, which was consolidated with the formal hearing on charges against Myers, the Board issued its adjudication and order making the findings summarized above.

The Board concluded that Geisel, as a supervisor, was required to insure that operations of the Funeral Home were conducted in accordance with the Law and with Board regulations promulgated thereunder. The Board determined that Geisel was subject to discipline pursuant to Section 11(a)(5) for misconduct in the profession for his employee's refusal to place the cremated remains in an urn provided by the widow and for his employee's failure to release the cremated remains unless payment of half of the funeral charge had been made. Pursuant to its authority under Section 17 of the Law, 63 P.S. § 479.17, the Board issued an amended order on May 17, 1999 reprimanding Geisel, imposing a $1,000 civil penalty, requiring that he successfully complete a course addressing Federal Trade Commission rules regarding the funeral industry, including professional ethics for funeral directors, and requiring that he provide a certificate from a qualified reviewer that the general price list of the Funeral Home is in compliance with Federal Trade Commission regulations.[2]

## II

Geisel first asserts that, although the Board has discretion to determine what

---

1. Section 11(a) provides in part:
   (a) The board, by a majority vote thereof, may refuse to grant, refuse to renew, suspend or revoke a license of any applicant or licensee, whether originally granted under this act or under any prior act, for the following reasons:
   . . . .
   (5) Gross incompetency, negligence or misconduct in the carrying on of the profession.
   "Misconduct" in this context has been held to mean breach of the generally accepted canons of ethics and propriety governing the respectful and reverential burial of the dead. *McKinley v. State Board of Funeral Directors*, 11 Pa.Cmwlth. 241, 313 A.2d 180 (1973).

2. The Court's review of the decision of the Board is limited to determining whether there was a constitutional violation or an error of law and whether the necessary findings of fact are supported by substantial evidence in the record. *Sweeny v. State Board of Funeral Directors*, 666 A.2d 1137 (Pa.Cmwlth.1995).

constitutes "misconduct" under Section 11(a)(5) of the Law, it must specify the underlying actions or substantive nature of the alleged improprieties upon which its determination is based, citing *State Board of Funeral Directors v. Sirlin*, 1 Pa. Cmwlth. 126, 274 A.2d 235 (1971). The Court notes, however, that the Board found that the petitioner funeral director in *Sirlin* had removed remains from a morgue "by means of false representations," "improperly and wrongfully remove[d]" personal effects, embalmed without seeking or obtaining permission from the next of kin and charged for the embalming. *Id.* at 237–238. The Court held that findings employing the quoted phrases without specifying the nature of the allegedly false representations or revealing the nature of the alleged improprieties and wrongs were insufficient and did not form a proper basis for conclusions. No such allegations or findings of falsehoods or fraud are involved here.[3]

The basis for the Board's discipline of Geisel is his status as supervisor of the Funeral Home when Myers' misconduct occurred. Geisel argues that the Board's findings specify no improper action or failure to act by him and that the Board does not identify any legal authority for its conclusion that he is subject to discipline due to the actions of his employee. He asserts that the regulations applicable to restricted business corporations, 49 Pa.Code §§ 13.141–13.144, require only that the supervisor be in good standing with the Board.

Geisel challenges the Board's reference in its adjudication to 49 Pa.Code § 13.157, which provides in part: "The supervisor for a widow, widower or estate licensee is responsible for complying with the act and this chapter [of regulations promulgated thereunder]." The Board stated that this standard must apply to supervisors for other entities as well, including restricted business corporations such as the Funeral Home. It is apparent to the Court that Section 13.157 merely serves to protect the holder of a widow, widower or estate funeral director license from responsibility for misconduct under the standards articulated. The remainder of the Section indicates that "[t]he widow, widower or estate licensee shall be held responsible for noncompliance only if the Board finds that the licensee had knowledge or should have known of the failure of the supervisor of the establishment to comply with the act or this chapter." That Section implies that all supervisors are responsible for complying with the Law, not the opposite.

Geisel contends that imputing professional responsibility to him for Myers' conduct constitutes a misapplication of the common law doctrine of respondeat superior, which has not been codified in the Law or in the regulations. He argues that application of this doctrine requires establishment of the relation of master and servant, citing *Bojarski v. M.F. Howlett, Inc.*, 291 Pa. 485, 140 A. 544 (1928), and that there must be an affirmative finding that the servant was acting within the scope of his or her employment, citing *Puhlman v. Excelsior Express and Standard Cab Co.*, 259 Pa. 393, 103 A. 218 (1918). Geisel asserts that the Board made no finding that Myers was an employee or that he was acting within the scope of his employment when he dealt

---

**3.** Geisel also argues that *Ciavarelli v. State Board of Funeral Directors*, 129 Pa.Cmwlth. 305, 565 A.2d 520 (1989), applies and controls in this case. In *Ciavarelli* a funeral director accused a priest of recommending a different funeral home to the family of decedents who were originally transported to the petitioner's funeral home under a refrigeration agreement with the county. The petitioner also criticized the director of the other funeral home. While conceding that the Board has discretion to determine what constitutes "misconduct" in carrying on an undertaking business, the Court nonetheless concluded that the petitioner's conduct, although unwise, was not grossly incompetent, negligent or immoral. In the present case, there is no dispute that the actions of Myers constituted misconduct; the only issue is whether Geisel as supervisor may be held professionally responsible for Myers' misconduct.

with Lewis. To the contrary, however, the Board's adjudication expressly stated in a footnote that Myers was an employee of the Funeral Home, and Finding of Fact No. 10 stated that Myers was acting on behalf of the Funeral Home when he executed the agreement with Lewis.

## III

The Board notes that it is charged with enforcing the Law and that it has been given authority to formulate necessary rules and regulations to that end. Section 16(a) of the Law, 63 P.S. § 479.16(a). Furthermore, the Law expressly requires as one condition of the issuance of a restricted corporate license that "[t]he corporation has, for each place of business operated by it, registered with the board the name of a licensed funeral director who will serve as a full-time supervisor of such place of business." Section 8(b)(6), 63 P.S. § 479.8(b)(6). The Board maintains that the purpose of this requirement is to assure that there is a licensed funeral director supervisor practicing with each establishment, who is a natural person who may be held responsible for his or her supervision.

The term "supervisor" is mentioned in numerous Board regulations. The term is defined in 49 Pa.Code § 13.1 as "[a] licensed funeral director employed on a full-time basis *to supervise the professional activities of a* licensed estate, widow, business corporation pre–1935[,] *restricted business corporation,* professional corporation or branch place of practice under any of the foregoing, as defined in the act." (Emphasis added.) In 49 Pa.Code § 13.83 the Board has provided in part: "A corporation shall conduct its business under the corporate name and the name of the supervisor shall appear in all forms of advertising." Furthermore, 49 Pa.Code § 13.113(a) requires that "[e]ach branch place of practice shall have a currently licensed funeral director, in good standing with the Board, assigned as supervisor. The supervisor shall supervise all operations of the branch and abide by the act and this chapter and may not be the same licensee who is in charge of the principal place of business."

In the regulations applicable only to restricted business corporations, 49 Pa.Code § 13.144(a) requires such a corporation that has been licensed by the Board to "have a licensed funeral director, in good standing with the Board, to be the permanently assigned supervisor." Subsection (b) requires the permanently assigned supervisor to devote full time to the business that he or she is supervising and not to conduct an establishment of his or her own or to associate with another business or activity "to the extent that this association interferes with or prevents the permanent supervisor from fulfilling the supervisory duties," which mirrors the definition of "full-time supervisor" in Section 2(11) of the Law, 63 P.S. § 479.2(11). In addition, 49 Pa.Code § 13.193 provides: "In order that the public knows the name of a licensed person who will serve them, an establishment which is maintained under a pre–1935 corporation, restricted business corporation, widow, widower or estate license shall indicate the name of the permanent supervisor in advertising media."

The Court recently considered a constitutional challenge to Section 13.193 that asserted an infringement of a funeral director's rights of commercial free speech in *Kleese v. Pennsylvania State Board of Funeral Directors,* 738 A.2d 523 (Pa. Cmwlth.1999), *appeal denied,* —— Pa. ——, 753 A.2d 822 (2000). The Court concluded that the proper analysis of the burden of disclosure placed upon the petitioner's commercial speech by this regulation is provided in *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio,* 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985). The *Zauderer* Court held that the rights of advertisers are adequately protected when disclosure requirements are reasonably related to the state's interest in preventing consumer deception. In upholding the constitutionality

of Section 13.193, the Court held in *Kleese* that "[i]ndicating the name of a supervisor in all advertisements *who is ultimately responsible for complying with the [Law]* lessens the possibility that the consumer may be deceived...." *Id.,* 738 A.2d at 527 (emphasis added). Thus the Court has interpreted the Board's regulations as placing the ultimate burden of compliance with the Law and the regulations on the supervisor.

The regulatory scheme established in the Law and the Board's regulations does not provide for frequent, intrusive inspections; it does rely critically upon the presence of a full-time supervisor at each individual licensed place of practice, who must supervise all, not some, of the professional activities conducted there. Despite Geisel's contentions, this case does not involve the common law concept of respondeat superior tort liability to a third party at all. *See Department of Public Welfare ex rel. Molek v. Hickey,* 136 Pa.Cmwlth. 223, 582 A.2d 734 (1990).[4] Rather, the case involves Geisel's professional responsibility for his failure to supervise Myers. Geisel was aware that the professional services had been undertaken and that his duty as a supervisor was to assure that the ser-

vices were performed in accordance with the Law and the regulations. Any suggestion that the supervisor's failure to supervise does not constitute "misconduct" under Section 11(a)(5) of the Law finds no support in the Law or in the Board's regulations. Accordingly, the Board did not err in concluding that Geisel, as supervisor of the Funeral Home, was ultimately responsible for assuring compliance with the Law and was therefore professionally responsible for his failure to supervise properly the Funeral Home employee under his supervision. The Board's order is affirmed.

## *O R D E R*

AND NOW, this 14th day of July, 2000, the order of the State Board of Funeral Directors is affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. The question before us in this case is whether the Pennsylvania State Board of Funeral Directors (Board), being a creature of statute, has authority to hold licensed funeral directors *vicariously* liable for the misconduct of their employees.[1] The majority does not address this particular issue.[2] The majori-

---

**4.** In *Hickey* the Court quoted W. Page Keeton et al., Prosser and Keeton on the Law of Torts (5th ed.1984), explaining that imputed negligence, also known as vicarious liability or respondeat superior, means that by reason of some relation between two parties the negligence of one is charged against the other, even though the latter has done nothing to aid or encourage it or indeed has done all he or she possibly could do to prevent it. The issue in this case is not tort liability, and Myers' conduct is not being imputed to Geisel. Rather, Geisel is being held professionally responsible for his failure to exercise his statutory supervisory authority in such a manner as to prevent the misconduct of Myers. Geisel has offered no affirmative defense that he attempted to prevent the misconduct.

**1.** In *Crowell v. City of Philadelphia,* 531 Pa. 400, 407, 613 A.2d 1178, 1181 (1992) (quoting Prosser and Keeton on Torts § 69 (5th ed.1984)), our supreme court stated:
> Vicarious liability, sometimes referred to as imputed negligence, "means in its simplest

form that, by reason of some relation existing between A and B, the negligence of A is to be charged against B although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that he possibly can to prevent it."
In *Department of Public Welfare ex rel. Molek v. Hickey,* 136 Pa.Cmwlth. 223, 582 A.2d 734 (1990), this court stated that the principle of imputed negligence, or vicarious liability, is given the Latin name of respondeat superior.

**2.** The majority does indicate that the Board made certain findings relating to the common law doctrine of respondeat superior. (Majority's op. at 752.) However, the majority does not specifically address whether respondeat superior is applicable here. Inasmuch as Geisel has properly raised the issue, I will address it here. I point out that, in his brief, Thomas L. Geisel argues:
> The doctrine of respondeat superior is a *common law* theory of liability, which has not been codified in the Act. Furthermore,

ty concludes only that the Board has authority to hold supervisors *directly* liable for failing to perform their supervisory duties.[3] (Majority op. at 753–54.) In other words, the majority has determined here that Thomas L. Geisel (Geisel) was negligent, or at fault, because of "his failure to supervise properly" his employee.[4] (Majority op. at 754.) However, the Board, which is the fact finder in this case, did *not* find that Geisel improperly supervised his employee, or that Geisel was at fault in any way; the Board simply held Geisel, as the supervisor of the funeral home, vicariously liable for the misconduct of his employee.[5] I do not believe that the Funeral Director Law (Law)[6] confers such power and authority upon the Board.

The power and authority to be exercised by an administrative agency must be conferred by legislative language that is "clear and unmistakable." *Pennsylvania Human Relations Commission v. St. Joe Minerals Corp., Zinc Smelting Division,* 476 Pa. 302, 310, 382 A.2d 731, 735 (1978). "A doubtful power does not exist. [Administrative bodies] are extrajudicial. They should act within the strict and exact limits defined. Only those powers within the legislative grant, either express or necessarily implied, can be exercised by the administrative body." *Id.* at 310, 382 A.2d at 735–36 (citations omitted).

Here, the Board reprimanded Geisel,[7] levied a $1,000.00 civil penalty[8] and ordered Geisel to complete a course of professional ethics for funeral directors because an employee, *not Geisel himself,* committed two acts of misconduct.[9] However, the Law does not state anywhere, or

---

there is no indication that the General Assembly intended to do so, or [that] the Act lends itself to such an interpretation. To the extent the Board has exercised its "discretion" to expand the definition of "misconduct" under the Act to such a degree that it includes respondeat superior liability, it has done so in an improper and abusive fashion.

(Geisel's brief at 12.) (Emphasis in original.)

3. If a supervisor is at fault for failing to perform supervisory duties properly, then the supervisor is subject to direct liability, not vicarious liability, for the misconduct of an employee. In *Fruit v. Schreiner,* 502 P.2d 133, 140 (Alaska 1972) (emphasis added), the Supreme Court of Alaska made the following relevant statement.

Since we are dealing with *vicarious* liability, justification may not be found on theories involving the employer's personal fault such as his failure to exercise proper control over the activities of his employees. . . . Lack of care on the employer's part would subject him to *direct* liability without the necessity of involving respondeat superior.

4. I note that the elements necessary to establish negligence are: (1) a duty recognized by law requiring a certain standard of conduct; (2) a failure to conform to that standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damages to the interests of another. *Colston*

*v. Southeastern Pennsylvania Transportation Authority,* 679 A.2d 299 (Pa.Cmwlth.1996).

5. The Board stated: "As supervisor of the Funeral Home, [Geisel] is responsible for the professionalism and behavior of the employees of that funeral establishment." (Board's op. at 7.)

6. Act of January 14, 1952, P.L. (1951) 1898, *as amended,* 63 P.S. §§ 479.1–479.20.

7. I note that the Board penalized Geisel's employee separately for the employee's misconduct.

8. Section 17(b) of the Law states that, in addition to any other civil remedy provided for in the Law, the Board may levy a civil penalty of up to $1,000.00 in cases where a current licensee violates a provision of the Law. 63 P.S. § 479.17(b). The Board applied this section to Geisel because one of Geisel's employees, *not Geisel himself,* committed two violations of the Law. (Board's op. at 8 n. 3.)

9. Section 11(a)(5) of the Law states that the Board may refuse to grant, refuse to renew, suspend or revoke a license for "misconduct in the carrying on of the profession." 63 P.S. § 479.11(a)(5). The Board found that Geisel's employee, *not Geisel himself,* "committed two acts of misconduct in the [carrying on of the] profession." (Board's op. at 8.) The Board then stated that, "[a]s supervisor,

necessarily imply in any of its provisions, that the Board may hold a licensed funeral director vicariously liable for the misconduct of an employee. Indeed, the majority cites no provision of the Law that gives the Board such power. Here, where *no* provision of the Law suggests that the Board may hold a supervisor vicariously liable for the misconduct of an employee, the Board may not do so.[10]

Accordingly, I would reverse.[11]

[Geisel] is responsible for those actions...." (Board's op. at 8.)

**10.** I note that the majority cites *Kleese v. Pennsylvania State Board of Funeral Directors*, 738 A.2d 523, 527 (Pa.Cmwlth.1999), *appeal denied*, —— Pa. ——, 753 A.2d 822 (2000), for the proposition that a supervisor is "ultimately responsible for complying with the [Law]." (Majority op. at 754.) However, the fact that supervisors themselves must comply with the Law does not mean that supervisors are vicariously liable for their employees' noncompliance with the Law.

**11.** I also note that the majority defends the Board's reliance upon section 13.157 of title 49 of the Pennsylvania Code, (*see* majority op. at 752), which states:

The supervisor for a widow, widower or estate licensee is responsible for complying with the act and this chapter. The widow, widower or estate licensee shall be held responsible for noncompliance only if the Board finds that the licensee had knowledge or should have known of the failure of the supervisor of the establishment to comply with the act or this chapter.

49 Pa.Code § 13.157. However, this regulation pertains only to widow, widower or estate licensees and their supervisors. Moreover, the regulation that applies to Geisel, 49 Pa.Code § 13.144(b), does not mention that supervisors are subject to vicarious liability. It simply states that supervisors shall devote full time to the business, and there is no evidence here that Geisel failed to do so.