Cynthia Johnson BLAKE,
FD, Petitioner,

v.

STATE BOARD OF FUNERAL
DIRECTORS, Respondent.

Commonwealth Court of Pennsylvania.

Argued March 6, 2001.
Decided March 30, 2001.

Ronald J. Harper, Philadelphia, for petitioner.

Thomas A. Blackburn, Harrisburg, for respondent.

Before SMITH, Judge, PELLEGRINI, Judge and JIULIANTE, Senior Judge.

SMITH, Judge.

Petitioner Cynthia Johnson Blake, F.D. seeks review of the September 8, 2000 adjudication and order of the Bureau of Professional and Occupational Affairs, State Board of Funeral Directors (Board) that suspended Petitioner's funeral director's license for six months and levied a $1,000 civil penalty against her for violating Section 11(a)(5) of the Funeral Director Law (Law), Act of January 14, 1952, P.L. (1951) 1898, *as amended,* 63 P.S. § 479.11(a)(5). The Board found that Peti-

tioner committed extremely serious misconduct in the profession by denying an estranged wife final private time with the deceased.

The questions presented in this appeal are whether the Board violated Petitioner's constitutional rights to due process by failing to provide adequate statutory or regulatory notice of the acts considered to be in violation of the Law and the scope of the Board's interpretation of its discretion; whether the discipline imposed was excessively harsh under the circumstances; and whether the Board's order should be set aside because it was not supported by substantial evidence, was arbitrary and capricious and contained errors of law. Petitioner also contends that she is entitled to a new hearing because of the ineffective assistance of her prior counsel who failed to disclose at the hearing that Petitioner sought and acted on his advice before the funeral.

I

Robert Lee Wright, Jr., married Mollie Wright (hereafter Wright) in 1972, and they had one child, Hollie Wright. Although they separated in 1975, they never legally divorced. In 1975 Robert Wright moved in with Joan E. Ryder (hereafter Ryder), also identified as Joan E. Ryder–Wright or Joan E. Wright, and they had one child, Ronnie Wright. They continued to live together for approximately 22 years until Robert Wright's death on July 6, 1997. Ryder thereafter contacted Petitioner's funeral home for it to retrieve the decedent's body from the Roxboro Memorial Hospital in Philadelphia. She made all of the funeral arrangements and assumed full responsibility for payment of the funeral.

The day after the decedent's death, his sister Frances McAliley went with Wright to the funeral home for copies of the death certificate, which listed Joan E. Moore (Ryder's maiden name) as the surviving spouse. Wright testified that she provided a copy of her marriage license to a representative of the funeral home, Don Johnson, and advised him that she wished to view the decedent's body either before or after the funeral and that Hollie wished to attend the funeral. The representative informed McAliley and Wright that the viewing and funeral were scheduled for July 11 at 9:00 and 10:00 a.m. respectively with interment to follow.

On July 8, 1997, Wright received a telephone call from Ryder's niece advising her that the funeral would be private and by invitation only. On July 9, Petitioner called Wright and informed her that there would be no problem with her attending the funeral and that it would proceed as scheduled. McAliley called the funeral home on the afternoon of July 10 to request that the decedent's body be held until another daughter, Wendy Wright Toogood, arrived from Alaska. Receiving no response, McAliley called the funeral home again later that afternoon and learned from Petitioner that the decedent had been buried at approximately 3:45 p.m. that day.

The Board issued an order to show cause almost two years later on June 29, 1999, charging Petitioner with providing misleading information to direct relatives of a decedent and refusing those relatives final private time with the decedent. At the hearing, McAliley and Wright testified concerning the events following the decedent's death and were found to be credible witnesses. Johnson was not called to testify. Petitioner testified that Ryder changed the funeral plans and gave her instructions for a direct, or private, burial of the decedent. Petitioner also testified that she contacted counsel for advice on how to handle the matter and that she did

not have a telephone number for McAliley or Wright to inform them of the changes. The prosecuting attorney cross-examined Petitioner about her office file, which contained a telephone number for McAliley only and a notation that Petitioner "would say nothing" to anyone. The Board did not find her credible.[1]

■ The Board °concluded that the Commonwealth had proven its case with respect to Wright but that it failed to provide sufficient evidence to establish that McAliley had requested final private time with her brother. Stating that Petitioner had the decedent buried on July 10 without notifying Wright of changes in the funeral schedule, the Board concluded that Petitioner's actions constituted extremely serious misconduct in the profession and therefore warranted the six-month suspension and $1,000 civil penalty. The Board determined that Petitioner's actions displayed disrespect for the decedent and represented a breach of generally accepted canons of ethics and propriety in the respectful and reverential burial of the dead.[2]

## II

■ Petitioner argues that the Board violated her constitutional rights to due process by taking her license pursuant to Section 11(a)(5) of the Law, 63 P.S. § 479.11(a)(5). Section 11(a)(5) provides: "(a) The board, by a majority vote thereof, may refuse to grant, refuse to renew, suspend or revoke a license of any applicant licensee, whether originally granted under this act or under any prior act, for the following reasons: ... (5) Gross incompetency, negligence or misconduct in the carrying on of the profession." Petitioner contends that neither the Law nor Board regulations required her to notify the public or direct relatives of a decedent when funeral arrangements were changed to private and instructions were given by the party who was identified as the surviving spouse and who arranged for the funeral that no further information be disclosed about the funeral plans. Finding no direction in the Law or in Board regulations, Petitioner had no prior notice that her conduct constituted a violation of the Law. She maintains that a suspension is unnecessary to safeguard the interests of the public and that when compared to suspensions and fines imposed in other cases, the Board's discipline amounts to an error of law and is arbitrary and excessively harsh.[3]

1. Counsel also cross-examined Petitioner about her deposition testimony in a related civil action in an effort to impeach her credibility. Commonwealth's Exhibit 2. Petitioner's counsel objected, and the Board deferred its ruling until it issued its adjudication and order. The Board stated that it made no findings of fact based upon the exhibit, that it was not otherwise used in adjudicating the matter and that any error in its admission was harmless.

2. The Court's review of the Board's order is limited to determining whether there was a constitutional violation or an error of law and whether the necessary findings of fact are supported by substantial evidence in the record. *Geisel v. Pennsylvania State Board of Funeral Directors*, 755 A.2d 750 (Pa.Cmwlth. 2000).

3. Petitioner argues in addition that she should be entitled to a new hearing because her counsel failed to bring out before the Board that she elicited and followed the advice of counsel and that it ultimately led to the Board's disciplinary action against her. The Board asserts that allegations of ineffective assistance of counsel do not warrant a new hearing because such a defense is limited to a review of criminal prosecutions and not civil or administrative proceedings. *Rosenthal v. State Board of Pharmacy*, 73 Pa.Cmwlth. 132, 457 A.2d 243 (1983). The Court need not resolve this issue because of the disposition reached.

The Board contends that it is authorized to suspend or revoke Petitioner's license for her misconduct. Citing *Geisel v. Pennsylvania State Board of Funeral Directors*, 755 A.2d 750, 751 n1 (Pa.Cmwlth. 2000), the Board reiterates the meaning ascribed to "misconduct" under Section 11(a)(5) of the Law, which has been held to "mean breach of the generally accepted canons of ethics and propriety governing the respectful and reverential burial of the dead." *See also McKinley v. State Board of Funeral Directors*, 11 Pa.Cmwlth. 241, 313 A.2d 180 (1973). The Board maintains that by failing to notify Wright of changes in the funeral plans, Petitioner denied Wright final private time with her estranged husband and effectively stole from her the last opportunity to address the decedent. The Board further argues that it did not violate Petitioner's constitutional rights by taking disciplinary action against her, notwithstanding the fact that neither the Law nor Board regulations provide that a funeral director may not deny final private time to a known family member of the decedent.

■ The Board cites *Stephens v. Pennsylvania State Board of Nursing*, 657 A.2d 71 (Pa.Cmwlth.1995), for the proposition that even if a statute arguably provides no ascertainable standard for what constitutes "unprofessional conduct" it nevertheless may be sufficiently clear when interpreted in the context of common knowledge and understanding of members of the profession. Moreover, in the absence of bad faith, fraud, capricious action or flagrant abuse of discretion, a reviewing court will not inquire into the wisdom of an administrative agency's action or into the details or manner of executing that action. *Slaw-*

*ek v. State Board of Medical Education and Licensure*, 526 Pa. 316, 586 A.2d 362 (1991).

Based upon an examination of the record, the Court concludes that the Board's findings do not support the conclusion that Petitioner violated Section 11(a)(5) of the Law, and, assuming arguendo that they do, the Board erred in imposing the degree of discipline ordered in this case. The Court accepts the Board's role as fact finder and the arbiter of witness credibility; however, where the Board's findings do not support the conclusions reached, this Court is bound to reverse. Moreover, when compared to the conduct committed in *Geisel*, there is no question that the penalty here is excessively harsh. In *Geisel* the Board imposed a $1,000 fine and a reprimand against the supervisor of a funeral home and ordered that he complete a course in professional ethics for his misconduct in the profession stemming from his employee's refusal to place the decedent's cremated remains according to the surviving wife's wishes in an urn that the wife purchased and refusal to release the remains unless the wife paid one-half of the funeral bill. Such conduct manifested a clear violation of Section 11(a)(5) of the Law.[4]

■ The Law requires the Board to ascertain that conduct claimed to be unprofessional was indeed such when interpreted in the context of common knowledge and understanding of members of the profession. There is no dispute that Ryder contacted the funeral home, presented herself as the wife of the decedent, made all of the funeral arrangements and assumed full responsibility for payment of the funeral. She is identified on the death certificate as

---

4. *See also Vogelman v. State Board of Funeral Directors*, 121 Pa.Cmwlth. 455, 550 A.2d 1367 (1988) (revoking a funeral director's license for his conviction of crimes involving moral turpitude based upon guilty pleas to various offenses, including mail fraud, income tax evasion and conspiracy to commit an offense against the government).

the surviving spouse, and she signed relevant documents admitted into the record as Joan E. Ryder–Wright. Furthermore, there is no dispute that Petitioner informed Wright of the funeral schedule, and the record reflects that Ryder changed the arrangements and requested a direct burial. Although the Board represents in its brief that all Petitioner needed to do was to contact Wright to state that funeral plans had changed, the Board fails to discuss Petitioner's professional responsibility to Ryder.

In *Ciavarelli v. State Board of Funeral Directors*, 129 Pa.Cmwlth. 305, 565 A.2d 520 (1989), the Court reversed the Board's suspension of a funeral director's licenses based on Board findings that he was unjustified in accusing a Catholic priest in the presence of others of improperly recommending funeral homes and in threatening the priest with a complaint to the Archdiocese. In reversing, the Court explained that the funeral director's conduct may have been unwise, but as a matter of law it did not rise to the level of misconduct sufficient to justify the penalty imposed. Although accepting as it must the Board's fact finding authority and its decision to credit Board witnesses, the Court nonetheless reiterated the rule that litigants are entitled to clear, precise and unambiguous statements of the Board, especially where one's professional license and pursuit are at stake. The Court was not convinced that the funeral director's conduct was grossly incompetent, negligent or immoral, such that it required the suspension imposed by the Board. Further, the Court was guided by its prior ruling that acts alleged to be in violation of a statute may not form the basis of a finding of grossly unprofessional conduct when those acts have not been enumerated in the statute.

Absent clear direction from the Board or a Board finding that the profession has settled upon a generally accepted practice for handling the kind of situation confronted by Petitioner, the Court cannot adopt the view that Petitioner's handling of the situation, even if incorrect, necessarily constitutes misconduct within the meaning of Section 11(a)(5) of the Law. Thus the Court cannot agree with the Board that its findings of fact support the conclusion that Petitioner committed extremely serious misconduct, namely the failure to notify an estranged wife of a change in the decedent's funeral schedule and the denial of final private time, when that conduct has not been enumerated in the Law or in Board regulations. In addition, the Board's inferences and/or conclusions that Petitioner misled immediate family members or that she intentionally had the decedent buried prior to the scheduled time simply are not supported on this record. The Court therefore reverses the Board and orders the immediate reinstatement of Petitioner's license.

## ORDER

AND NOW, this 30th day of March, 2001, the order of the Bureau of Professional and Occupational Affairs, State Board of Funeral Directors is reversed, and the funeral director's license of Cynthia Johnson Blake, F.D., is hereby reinstated.