550 A.2d 1367

Edward F. Vogelman, a/k/a Edward F. Mulligan, Petitioner *v.* Commonwealth of Pennsylvania, State Board of Funeral Directors, Respondent.

Argued September 16, 1988, before Judges DOYLE and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*George W. Berkelbach, III, George W. Berkelbach, III, Ltd.*, for petitioner.

*Joseph P. Alexa*, Assistant Counsel, with him, *Joyce McKeever*, Chief Counsel, Bureau of Professional and Occupational Affairs, and *Velma A. Boozer*, Chief Counsel, Department of State, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, December 2, 1988:

Edward F. Vogelman a/k/a Edward Mulligan (Petitioner) appeals an order of Pennsylvania State Board of Funeral Directors (Board) revoking his licenses to practice as a funeral director and funeral supervisor and fining him $1,000.00 pursuant to Sections 11(a)(3) and 17(b) of the Funeral Director Law[1] (Law).

Petitioner was licensed to practice as a funeral director in Pennsylvania as of July 27, 1984 and received his funeral supervisor's license as of August 8, 1985. On February 26, 1986, Petitioner pled guilty to the following criminal charges in federal court: one count of conspiracy to commit an offense against the United States in violation of 18 U.S.C. §371; one count of income tax evasion in violation of 26 U.S.C. §7201; one count of false statements on income tax returns in violation of 26 U.S.C. §7206(1); and two counts of mail fraud, and aiding and abetting in violation of 18 U.S.C. §1341.

---

[1] Act of January 14, 1952, P.L. (1951) 1898, *as amended*, 63 P.S. §§479.11(a)(3), 479.17(b).

The guilty pleas arose from a fraudulent scheme Petitioner was involved in between 1976 and 1982. Petitioner would receive brass ingots from the chief chemist at U.S. Metals Refining, Inc. who prepared false assay certificates representing that these brass ingots contained precious metals such as gold and silver. Petitioner would then sell the ingots to U.S. Metals, a subsidiary of Amax, Inc. and be paid the market rate for ingots containing precious metals.

Petitioner admitted he acted as a broker in these transactions and received a 5% fee. Shortly after he began making the deliveries, he realized the fraudulent nature of the scheme. He then demanded and received from the chief chemist a sum of $100,000.00 in addition to his broker's fee and continued to participate in the scheme.

Relying on the fraudulent representations that the brass ingots contained precious metals, Amax, Inc. was defrauded of approximately 2.5 million dollars between 1976 and 1982. Petitioner failed to disclose the income he had from this scheme to the Internal Revenue Service, thereby understating his income for the years 1979 through 1982 by approximately $427,000.00.[2]

After entering his guilty plea in federal court to conspiracy to commit an offense against the United States, Petitioner was sentenced to five years imprisonment. The first six months were to be spent in a halfway house with work release. The remaining 4½ year sentence was suspended and Petitioner placed on probation instead. Petitioner was ordered further to make restitution of $201,576.00 over a five year period. Petitioner received a five year concurrent sentence as a result of

---

[2] *See* Government's Change of Plea Memorandum (Item 21 of the record).

his guilty pleas to the remaining counts outlined in the Government's Change of Plea Memorandum.

. The Board issued an Administrative Complaint and Rule to Show Cause against Petitioner alleging he violated Section 11(a)(3) of the Law which provides:

**§479.11 Refusal; suspension; revocation**

(a) The board, by a majority vote thereof, may refuse to grant, refuse to renew, suspend or revoke a license of any applicant or licensee, whether originally granted under this act or under any prior act, for the following reasons:

. . . .

(3) The conviction of a crime involving moral turpitude, in this or any other State or Federal court or pleading guilty or nolo contendere to any such offense.

As a result of the Administrative Complaint and Rule to Show Cause, a hearing was held before the Board on March 3, 1987, at which Petitioner testified in his own behalf. By way of adjudication and order dated October 6, 1987, the Board found that Petitioner had violated Section 11(a)(3) of the Law. The Board revoked his funeral director's and funeral supervisor's licenses, and further imposed a $1,000.00 civil fine.[3]

On appeal, Petitioner first contends that the Board erred by revoking his license for conduct which occurred prior to the date of his licensure. Petitioner does not dispute that he pled guilty to crimes involving moral turpitude; however, he argues that Section 11(a)(3) is ambiguous and that the Legislature intended that the underlying criminal conduct must occur during the pe-

---

[3] Section 17(b) of the Law provides in pertinent part:

In addition to any other civil remedy or criminal penalty provided for in this act, the board . . . may levy a civil penalty of up to one thousand dollars ($1,000) on any current licensee who violates any provision of this act. . . .

riod of licensure. In support of this contention, Petitioner points out that although he was convicted in 1986, the underlying criminal conduct took place from 1976 through 1982.[4] He notes that he received his education and training from 1982 through 1984 and he did not receive his funeral director's license until 1984.

Section 11(a)(3) of the Law provides that the Board may revoke a license upon the *conviction* of a crime involving moral turpitude or for a *guilty plea* or a plea of *nolo contendere* to such a crime. The clear wording of the statute does not support Petitioner's argument. If the Legislature had intended that the Board could only sanction a licensee for misconduct while licensed it would have said so. Instead, the Law provides that the conviction, guilty plea, or plea of nolo contendere is the event which triggers the Board's ability to impose sanctions. *Cf. Morris v. Department of State, Bureau of Professional and Occupational Affairs, State Board of Pharmacy,* 113 Pa. Commonwealth Ct. 318, 537 A.2d 93 (1988). (Pursuant to Section 7(d.2) of the Pharmacy Act, Act of September 27, 1961, P.L. 1700, *as amended,* 63 P.S. §390-7(d.2), the event which results in an automatic suspension of a pharmacist's license is the *conviction* rather than the *commission* of a felony under The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§780-101 to 780-144.)

Section 11(a)(3) provides that the conviction of a crime involving moral turpitude is the basis for refusing to grant an initial license to an applicant as well as a basis for revoking the license of a practicing funeral director. By accepting Petitioner's interpretation that the

---

[4] Petitioner actually asserts that his criminal activity ceased in 1981 but the Board found that it continued into 1982.

criminal conduct must occur during the period of licensure, we would have to ignore this language.

Petitioner cites *Secretary of Revenue v. John's Vending Corporation*, 453 Pa. 488, 309 A.2d 358 (1973), in support of his argument that the Board may not revoke or suspend a license for acts of misconduct committed prior to the date of licensure. In that case, a cigarette wholesale dealer's license was revoked in 1971 pursuant to Section 405 of the Pennsylvania Cigarette Tax Act,[5] for having committed crimes of moral turpitude. An officer of the licensee had been convicted of selling untaxed liquor, of possessing and transporting unstamped whiskey and possessing and selling derivatives of opium in the early 1950's. Our Supreme Court held that in light of the fact that the convictions occurred approximately twenty years prior to the license revocation and since there were no allegations of impropriety during the twelve years of licensure, the corporate officer's prior convictions did not reflect upon the licensee's current ability to properly perform its duties.

The holding in *John's Vending* was based on the fact that the past misconduct was so remote in time as to no longer have a bearing on the present conduct of the licensee. However, in the case at hand, the administrative complaint was filed only ten months after Petitioner entered his guilty pleas. Petitioner's fraudulent conduct took place over a number of years and ended only two years prior to his licensure as a funeral director. Therefore, the holding in *John's Vending* is not controlling.

We hold that the Board may suspend, revoke or refuse to renew a license upon the licensee's conviction of

[5] Act of July 22, 1970, P.L. 513, *as amended,* 72 P.S. §3169.405, *repealed by* Section 1297 of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §8297. A similar provision now appears at Section 1225 of the Code, 72 P.S. §8225.

a crime involving moral turpitude or a plea of guilty or nolo contendere to such an offense, even if the crime was committed prior to the date of licensure.

Petitioner next maintains that the Board erred in revoking his license for misconduct which was unrelated to his profession. In support of this argument Petitioner states that as ten of the twelve categories of misconduct in Section 11(a)(3) deal with conduct related to the licensed profession, we should infer that Section 11(a)(3), dealing with crimes involving moral turpitude, and Section 11(a)(9) of the Law,[6] pertaining to gross immorality, also require conduct related to the practice of the profession. Once again, Petitioner is attempting to re-write the Law.

Sections 11(a)(3) and 11(a)(9) of the Law clearly do not require that the misconduct relate to the practice of funeral directing. While this relationship may be one factor which the Board should consider in determining the appropriate sanction to impose pursuant to Sections 11(a)(3) and 11(a)(9), it is not a prerequisite to a finding of misconduct. In any event, the Board found that Petitioner's misconduct did relate to his licensed profession. We agree.

Petitioner was involved in an ongoing fraudulent scheme for financial gain and failed to report any income made as a result of this scheme to the Internal Revenue Service. Instead of withdrawing from his role as a broker in the transactions when he learned the fraudulent nature of the scheme, Petitioner demanded an additional $100,000.00 from a conspirator.

As the Board noted, a funeral director and/or supervisor deals with members of the public at a time when they are often vulnerable and susceptible to misdirection by an unscrupulous licensee. Further, the licensee,

---

[6] 63 P.S. §479.11(a)(9).

acting in the role of fiduciary to the client, is entrusted with large sums of money at one time. Petitioner's fraudulent conduct calls into question his integrity and character. The Board is justified in considering these past acts in determining the likelihood of whether he might betray the trust of a member of the public. Therefore, in this way, those crimes to which Petitioner entered guilty pleas are related to his licensed profession.

Lastly, Petitioner maintains that the Board abused its discretion by imposing an unduly harsh punishment as the Commonwealth's attorney only requested a two year suspension followed by two years of probation. Petitioner also argues that the penalty is harsher than that imposed by various other licensing boards against licensees convicted of crimes and by this Board in a prior case where the licensee had failed twice to place monies for prepaid funerals in escrow accounts and failed to display the proper license.[7]

The Board consists of the Commissioner of Professional and Occupational Affairs, the Director of the Bureau of Consumer Protection or his or her designee, and seven gubernatorial appointees, five of whom must be funeral "directors of good moral character" who have been practicing funeral directing for at least ten years.[8] Therefore, the Law ensures that the Board is well-qualified to oversee the profession and to protect the public. As the entity charged with overseeing the examination, licensure, and registration of those individuals and corporations engaged in funeral directing, the Board has the discretion to determine the appropriate sanction to impose for a licensee's acts of misconduct.

---

[7] *State Board of Funeral Directors v. Cieslak*, 24 Pa. Commonwealth Ct. 315, 355 A.2d 590 (1976).

[8] *Section 19(a) of Law, 63 P.S. §479.19(a).*

The sanctions which the Board imposes depend on the facts of each individual case. Therefore, prior cases dealing with misconduct of a different nature and/or license revocations under different statutes are irrelevant. Considering the seriousness and duration of Petitioner's misconduct, we cannot say that the Board abused its discretion in this case.

The Board is not required to accept the recommendation of the prosecuting attorney any more than it is required to accept a sanction recommended by Petitioner's counsel. Nor should the Board impose a lesser sanction because Petitioner has already received a criminal sentence from a state or federal court as a result of a criminal conviction. It is within the Board's discretion to revoke Petitioner's license pursuant to Section 11(a)(3) and to impose a $1,000.00 civil fine pursuant to Section 17(b). We may not substitute a lesser sanction for that of the Board's where there has been no abuse of discretion. Accordingly, we will affirm the order of the Board.

ORDER

AND NOW, this 2nd day of December, 1988, the order of the State Board of Funeral Directors, dated October 6, 1987, revoking the license to practice funeral directing, License No. FD-012609-L, and the license to practice as a funeral supervisor, License No. FS-012609-L, both issued to Edward F. Mulligan a/k/a Edward F. Vogelman and imposing a fine of $1,000.00 against said individual, is affirmed.

Judge MACPHAIL did not participate in the decision in this case.