# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jane C. Collaso,                      :
                  Petitioner      :
                                 :
            v.                 :   No. 1118 C.D. 2015
                                 :   Submitted:  February 19, 2016
Bureau of Professional and     :
Occupational Affairs, State      :
Board of Social Workers,       :
Marriage and Family Therapists  :
and Professional Counselors,   :
                 Respondent   :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**             **FILED:  July 1, 2016**


Petitioner Jane C. Collaso (Collaso) petitions for review of an order of the Bureau of Professional and Occupational Affairs, State Board of Social Workers, Marriage and Family Therapists and Professional Counselors (Board), revoking Collaso's license to practice clinical social work.  We affirm the Board's order.

By way of background, on July 13, 2010, Collaso pleaded guilty to two counts of simple assault, which is a grade 2 misdemeanor.  The criminal charges against Collaso arose as a consequence of Collaso's assault of a former client (K) and the client's husband (T).  The criminal complaint alleged that Collaso had engaged in an affair with the former client and that she went to the

former client's home, where she attacked K and T. According to the Board's brief,[1] on May 3, 2011, as a result of the convictions, the Board, in a separate proceeding, issued an Immediate Temporary Suspension order (ITS). Ultimately, Collaso and the Board agreed to a resolution of Collaso's challenge to the ITS, resulting in a 180-day temporary suspension of Collaso's license.

During that period of temporary suspension, on July 12, 2011, the Pennsylvania Department of State (Department) issued an Order Compelling the Mental and Physical Examination of Collaso. Although Collaso attended two examinations, the examiner concluded that he could not render an opinion regarding Collaso's mental or physical condition, because Collaso had not provided all requested records and responses to direct questions. Based upon the examiner's conclusion, on September 13, 2011, the Department filed a motion to deem facts admitted and for entry of default. The Department's motion also sought an order of the Board suspending Collaso's license until such time that she complied with the July 12, 2011 order to submit to the mental and physical examination. On October 20, 2011, the Board issued a final memorandum order: (1) granting the Department's motion to the extent it sought to deem facts admitted and entry of default; but (2) dismissing without prejudice the Department's motion to the extent it sought to compel Collaso to submit to a mental and physical examination. (R.R. at 51a.)

The Board's October 20, 2011 order deemed facts admitted indicating that Collaso failed to comply with the July 2011 order directing her to submit to an evaluation. Included in those facts deemed admitted were: (1) Collaso failed to

---

[1] Respondent's Brief at 10 n.14.

provide the examiner with her medical records; (2) Collaso failed to provide the examiner with a copy of her curriculum vitae in advance of the examination; (3) during the examiner's interview of Collaso, she refused to discuss the incident involving her former patient and the patient's husband; and (4) upon the second examination, Collaso again refused to provide the examiner with her medical records and refused to discuss the triggering patient incident. The Board accepted as a fact that, because Collaso did not cooperate with the examinations, the examiner was unable to provide an opinion regarding Collaso's emotional state or psychiatric condition. (R.R. at 49a-50a.)

Despite those findings and the Board's conclusion that Collaso was in default for failing to submit to the examination, the Board elected not to exercise its authority to suspend indefinitely Collaso's license until she complied with the provisions of the initial examination order. (R.R. at 50a-51a.) The Board reasoned that the Department's request for an order compelling Collaso to submit to another exam did not specify whether the Respondent was seeking an examination regarding potential drug addiction or for mental incompetence. On November 1, 2011, the Board issued an order reinstating Collaso's license. Although Collaso's participation in/or submissions to the mental and physical examinations are pertinent to the petition for review, the proceedings involving the ITS are not at issue in this matter.

On November 11, 2011, a prosecutor with the Department issued a notice to Collaso advising her that the Department had initiated formal disciplinary proceedings against her and informing her of her rights to respond to and defend against the proceedings. The Department initiated the proceedings in an order directed to Collaso to show cause (Order to Show Cause) why the Board should

3

not impose a disciplinary sanction against her based upon her actions leading up to her two criminal convictions. The Order to Show Cause identified Collaso's alleged violations of the Social Workers, Marriage and Family Therapists and Professional Counselors Act (Social Workers Act)[2] and the Criminal History Records Information Act (CHRIA)[3] as grounds for the potential imposition of sanctions.

The Order to Show Cause referred to the criminal complaint upon which Collaso's two criminal convictions were based, which, as indicated above, described Collaso's forcible entry in the home of K and T, her actions that night, and her guilty pleas to two counts of simple assault. The Department claimed that it was empowered to suspend, revoke, or restrict Collaso's license under the following:

- Section 11(a)(1) of the Social Workers Act,[4] 63 P.S. § 1911(a)(1), based upon Collaso's misdemeanor assault convictions. (Count One)

- Section 9124(c)(2) of the CHRIA,[5] 18 Pa. C.S. § 9124(c)(2), based upon Collaso's guilty plea to the two assault charges. (Count Two)

- Section 11(a)(2) of the Social Workers Act,[6] 63 P.S. § 1911(a)(2), for alleged violations of:

---

[2] Act of July 9, 1987, P.L. 220, *as amended*, 63 P.S. §§ 1901-1922.

[3] Act of July 16, 1979, P.L. 116, *as amended*, 18 Pa. C.S. §§ 9101-9183.

[4] Section 11(a)(1) of the Social Workers Act provides, in pertinent part, that "[t]he board may . . . suspend, revoke, limit or restrict a license . . . for any of the following: (1) Being convicted of a felony or a crime of moral turpitude in any state . . . court."

[5] Section 9124(c)(2) of the CHRIA provides, in pertinent part, that "[b]oards, commissions or departments of the Commonwealth authorized to license, certify, register or permit the practice of . . . professions may . . . suspend or revoke any license . . . '[w]here the applicant has been convicted of a misdemeanor which relates to the . . . profession for which the license . . . is sought.'"

4

(a)  Section 1.01 of the National Association of Social Workers (NASW) Code of Ethics (Code), which provides that social workers have a primary responsibility to promote the wellbeing of clients. (Count Three)

(b)  Section 1.06(c) of the NASW Code, which prohibits social workers from engaging in dual relationships with clients or former clients when such a relationship poses a risk of exploitation or harm to a client.  (Count Four)

(c)  Section 1.10 of the NASW Code, which prohibits social workers from engaging in physical contact with clients when there is a possibility of psychological harm to the client as a result of such contact.  (Count Five)

(d)  Section 4.05(a) of the NASW Code, which prohibits social workers from allowing personal problems and psychosocial distress, *inter alia*, to interfere with professional judgments and performance or to jeopardize the best interests of people to whom they have a duty of professional responsibility.  (Count Six)[7]

- Section 11(a)(7) of the Social Workers Act,[8] 63 P.S. § 1911(a)(7), for failure to obey the Board's order directing her to submit to a mental and physical examination and to submit medical and mental health records to the examining physician. (Count Seven).

---

**(continued…)**

[6] Section 11(a)(2) of the Social Workers Act provides, in pertinent part, that "[t]he board may refuse, suspend, revoke . . . or restrict a license . . . for . . . [b]eing found guilty of immoral or unprofessional conduct."  Section 11(a)(2) defines the term "unprofessional conduct" to "include any departure from or failure to conform to the standards of acceptable and prevailing practice."  In proceeding under this provision, the Department need not establish that a licensee caused actual injury to a client. *Id.*

[7] Count Six of the Rule to Show Cause was mistakenly numbered as Count Five.

[8] Section 11(a)(7) of the Social Workers Act provides that the Board may revoke or suspend a license for "violat[ion of] an order of the board previously entered in a disciplinary proceeding."

5

The Department also asserted that it was empowered to impose a civil penalty for any of these alleged violations pursuant to Section 17(b) of the Social Workers Act, 63 P.S. § 1917(b), or Section 5(b)(4) of the law commonly referred to as the Licensing Boards and Commissions Law (Act 48),[9] 63 P.S. § 2205(b)(4), and that it had the power to impose costs of investigation upon Collaso under Section 5(b)(5) of Act 48, 63 P.S. § 2205(b)(5).

On February 12, 2013, the Board conducted a formal hearing on the Order to Show Cause. During the hearing, the Department presented the testimony of one of the officers called to the house where Collaso assaulted K and T. The Department also presented the testimony of Vincent J. Gioe, Ph.D., a licensed clinical psychologist and licensed marriage and family therapist, who the Board qualified as an expert regarding the ethical standards set forth in the NASW.

Collaso testified on her own behalf. She refuted the description of the conduct that gave rise to the criminal charges. Collaso testified that K came to counseling on her own, without her husband; that K called her the night of the altercation; that she, Collaso, went to the home and entered without conflict; that she did not strike T or K; that although K had been her client, a personal relationship did not arise until after she referred K to other therapists; and that she had not engaged in a sexual relationship, but rather that "feelings" existed between K and herself. The Board concluded that Collaso's attempt to re-characterize the scenario that was described in the criminal complaint constituted an impermissible collateral attack on her convictions.

---

[9] Act of July 2, 1993, P.L. 345, *as amended*, 63 P.S. §§ 2201-2207.

On May 8, 2015, the Board issued a final adjudication and order. The Board rendered the following pertinent factual findings:

8. [Collaso] pled guilty to two (2) counts of Simple Assault, Grade two misdemeanor offenses, in violation of 18 Pa. C.S. § 2701(a)(1).

10. The incident that resulted in [Collaso]'s guilty plea involved [Collaso] forcibly entering the home of a former client/patient, K, and the client's husband, T, and physically assaulting K and T causing injury.

13. As a result of [an altercation between Collaso and K and T at K and T's home] K's face was red and irritated with small scratches on her lips. T also had a scratch by his left eye.

14. T and K had gone to [Collaso] for marital counseling. After one session together, [Collaso] asked to see K alone.

15. [Collaso] and K began seeing each other outside of counseling and began a personal/sexual relationship.

16. After two or three counseling sessions with K alone, [Collaso] referred her to other therapists for therapy.

17. K ended the relationship with [Collaso] when she deciding to work on her marriage.

20. The mental and physical examination was conducted on August 7, 2011.

22. [Collaso] refused to answer questions from Dr. Voskanian relative to the criminal complaint of February 15, 2010.

23. Because [Collaso] refused to comply fully with the Board's order, Dr. Voskanian was unable to formulate an opinion as to [Collaso]'s emotional state or psychiatric condition.

24. After being informed of Dr. Voskanian's inability to render an opinion on her fitness to practice social work, [Collaso] attended a re-examination with Dr. Voskanian on September 2, 2011.

25. [Collaso] again failed to provide Dr. Voskanian with her medical records as required by the Board's Order.

7

26. During the September 2, 2011, examination, [Collaso] again refused to discuss the incident which led to the Criminal Complaint of February 15, 2010.

27. Because [Collaso] refused to comply fully with the Board's Order, Dr. Voskanian was unable to offer an opinion as to [Collaso]'s emotional state or psychiatric condition.

The Board concluded that Collaso's guilty pleas established: (1) the commission of crimes of moral turpitude for the purpose of Section 11(a)(1) of the Social Workers Act; (2) the commission of crimes relating to Collaso's profession for the purpose of Section 9124(c)(2) of the CHRIA; (3) violations of Section 11(a)(2) of the Social Workers Act based upon the provisions of the NASW Code cited in the Order to Show Cause; and (4) Collaso's violation of Section 11(a)(7) of the Social Workers Act, based upon her failure to submit as ordered to a physical and mental examination.

Collaso, *pro se*, petitions for review of the Board's order,[10] raising the following issues in her brief:[11] (1) Whether substantial evidence supports the Board's findings pertinent to the legal question of whether the Board erred with regard to its conclusion that Collaso engaged in unprofessional or immoral conduct where, she claims: (a) the evidence does not indicate that she failed to promote a client's well-being; (b) the Board erroneously referred to other initial charges that

[10] Our review in this matter is limited to considering whether necessary factual findings are supported by substantial evidence, and whether the Board erred as a matter of law, and, if properly raised, whether any constitutional rights were violated. 2 Pa. C.S. § 704.

[11] Collaso raises the following questions in her statement of questions involved: (1) whether the Board issued a well-reasoned decision revoking Collaso's license; and (2) whether the Board erred in its assessment of the evidence, such that the sanction the Board imposed was harsh. As described below, Collaso raises more specific questions in the discussion section of her brief, and we glean the pertinent issues therefrom.

the prosecutor eventually dropped; and (c) the Board did not consider whether the assaults were remote in time to her treatment of K; (2) whether the Board's notice failed to provide sufficient notice of the nature of the charges and, thereby, violated Collaso's due process rights; (3) whether the Board erred in concluding that the grade two misdemeanor simple assault convictions constitute crimes of dishonesty or moral turpitude; (4) whether the sanction the Board imposed is unconstitutionally harsh; and (5) whether collateral estoppel applies to preclude the Department's prosecution as set forth in the Order to Show Cause based upon the earlier temporary license suspension proceeding. Because Collaso sometimes addresses these arguments in a somewhat random manner and because some of these arguments are addressed only to certain of the Counts in the Order to Show Cause, we will first address Collaso's arguments regarding specific Counts and address common arguments thereafter.

## COUNT I

### Crime of Moral Turpitude

With regard to Count I, which asserts that Collaso's license is subject to revocation based upon conviction for a crime of moral turpitude under Section 11(a)(1) of the Social Workers Act, the Board considered whether the misdemeanor simple assault convictions constituted crimes of moral turpitude. Citing *Foose v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 578 A.2d 1355 (Pa. Cmwlth. 1990), the Board opined that this Court defined crimes of moral turpitude as "anything done knowingly contrary to justice or good morals," *Foose*, 578 A.2d at 1357, and that Collaso's assault convictions fell within that definition because assaults "are inconsistent with the definition of good moral character [and they] involve a reprehensible state of mind." (Board

9

Opinion at 15.) The Board wrote that "the reprehensible state of mind" at issue with the misdemeanors of which Collaso was convicted "is the knowing or reckless attempt to cause or causing bodily injury to another, or engaging in conduct which constitutes a physical menace intended to put another in fear of serious bodily injury." *Id*. The Board distinguished third-degree misdemeanor simple assault, which involves conduct that may be lacking in a "reprehensible state of mind" that could arise in a situation such as "a fight or flight scuffle by mutual consent." *Id*. The Board was persuaded that Collaso's intentional appearance at the home of K and T and her assault constituted a crime of moral turpitude.

We conclude that the Board did not err in concluding that Collaso's two assault convictions constitute crimes of moral turpitude for the purpose of Section 11(a)(1) of the Social Workers Act. In *Bowalick v. Department of Education*, 840 A.2d 519 (Pa. Cmwlth. 2004), this Court, in considering whether the Pennsylvania Department of Education had sufficient grounds to revoke a teaching certificate, addressed the question of whether the crime of simple assault always constitutes a crime of moral turpitude. In *Bowalick*, a teacher was arrested, convicted, and sentenced on a simple assault charge involving his wife. The Department of Education sent him a notification that it was seeking to revoke his certificate based upon its belief that simple assault is a crime of moral turpitude. We noted in *Bowalick* that the governing regulations in that case provided that the only relevant inquiry when questioning whether a crime is one of moral turpitude relates to the particular elements of the crime committed, not to the facts underlying the particular commission of the crime. The regulatory provision at issue, 22 Pa. Code § 237.9(a), provided guidance, defining "moral turpitude" as

10

including "reckless conduct causing bodily injury to another." Although the definition in the regulation also included "conduct done knowingly contrary to justice, honesty or good morals," we opined that the term "moral turpitude" as defined in the regulation, as well as the definitions arising in other statutory contexts

> requires a reprehensible state of mind or *mens rea*. Thus, it may be an "act of baseness, vileness, or depravity, contrary to the accepted customary rule of right and duty between two human beings." Such an act requires at least knowledge of private impropriety or the potential for social disruption. Also an act of moral turpitude may consist of intentional, knowing or reckless conduct.

*Bowalick*, 840 A.2d at 523-24 (internal citations omitted).

The Court considered the elements of the crime "simple assault," but noted that the crime of simple assault "can lack a reprehensible state of mind when arising in the context of a fight or scuffle by mutual consent." *Id*. at 524. The Court concluded that, because the possibility existed that the teacher and his wife entered into the altercation under such "mutual consent," the Professional Standards and Practices Commission,[12] was required to conduct a hearing to determine whether the teacher had pleaded guilty to facts involving moral turpitude, *i.e.*, facts indicating that the "mutual consent" type of assault was not at issue. That rationale is consistent with this Court's decisions holding that the question of whether a particular crime is one involving moral turpitude depends on

---

[12] The Professional Standards and Practices Commission (Commission) was established by the Educator Discipline Act, Act of December 12, 1973, P.L. 397, *as amended*, 24 P.S. §§ 2070.1-.18c, which authorizes the Commission, in part, to direct the Department of Education to discipline any educator in accordance with the act, including revoking an educator's teaching certificate.

11

the elements of the crime rather than an independent examination of the details of the behavior underlying the crime. *See Startzel v. Dep't of Educ.*, 562 A.2d 1005, 1007 (Pa. Cmwlth. 1989), *appeal denied*, 574 A.2d 76 (Pa. 1990). In this matter, the convictions were graded as misdemeanors of the second degree. Assaults that arise from a fight involving mutual consent are graded lower than second degree misdemeanors. 18 Pa. C.S. § 2701. It appears, therefore, that Collaso's convictions, which were graded more severely than those that might arise from "mutual consent," fall within this Court's holdings regarding crimes of moral turpitude. Consequently, we conclude that the Board did not err in concluding that Collaso's simple assault convictions are for crimes of moral turpitude.

### Sufficiency of Notice

Collaso asserts that the Board's notice was insufficient and violated her due process rights. This argument appears to relate to the charges contained in Count One. In her brief, Collaso asserts that the Department charged her vaguely with "lacking good moral character." (Petitioner's Brief at 19.) Collaso, however, does not reference the particular charge in which the Department used the phrase "moral character." Our review of the Order to Show Cause, however, indicates that the Department alleged that Collaso's convictions constituted crimes of moral turpitude, which under Section 11(a) of the Social Workers Act provides grounds for revocation of a license. Thus, the precise challenge Collaso is seeking to raise is unclear, because the charges do not use the phrase "moral character." Even if Collaso had more clearly articulated the question, she did not raise before the Board a due process challenge to the sufficiency of the notice. Thus, we believe that this issue has been waived. *McGrath v. State Bd. of Dentistry*, 632 A.2d 1027,

12

1031 (Pa. Cmwlth. 1993) (constitutional challenge to agency proceedings generally must be timely raised and preserved for purposes of appellate review).

**COUNTS THREE AND FIVE**
**Violations of NASW Code Sections 1.01 and 1.10**

Collaso contends there is a lack of evidence to support the Board's findings regarding the alleged violations of Sections 1.01 and 1.10 of the NASW Code. Section 1.01 provides that a social worker's primary responsibility is the well-being of a client. Section 1.10 provides that social workers should not engage in physical contact with a client if such contact has the potential to cause psychological harm to a client. Collaso claims that there is insufficient evidence to support a finding that she failed to promote the well-being of a client. Collaso also asserts that the Board improperly referred to certain charges (presumably in the criminal complaint) against her that were eventually dropped. Collaso does not specify which particular factual findings are not supported by evidence. It would appear that Collaso intended to argue that the findings do not support the Board's legal conclusions that Collaso violated the NASW Code-based charges against her. Collaso has presented no legal arguments or provided any pertinent legal citations in support of her claim that the factual findings do not support the Board's legal conclusions. Accordingly, we conclude that Collaso has waived this issue by failing to brief the issue adequately.[13] *In re: Condemnation of Land for S.E. Cent.*

---

[13] Collaso follows this argument with a reference to *Blake v. State Board of Funeral Directors*, 770 A.2d 380 (Pa. Cmwlth.), *appeal denied*, 786 A.2d 990 (Pa. 2001), but Collaso has not explained how our holding in that decision bears upon this matter. Additionally, Collaso asserts that a reasonable mind could view the evidence in this case as sufficient to support a finding that she is capable of engaging in her profession. Without any sufficient argument in **(Footnote continued on next page…)**

*Bus. Dist. Redevelopment Area #1: (405 Madison St., City of Chester)*, 946 A.2d 1154, 1156 (Pa. Cmwlth.), *appeal denied*, 968 A.2d 233 (Pa. 2008), *cert. denied*, 556 U.S. 1208 (2009) ("[a]rguments not properly developed in a brief will be deemed waived").

## COUNT SEVEN

Collaso also asserts that the Board erred in determining that she failed to provide requested medical documentation to the examiner, arguing that the Board failed to consider that she attended two examinations, that she sat in an examination room for four hours, and that she orally provided information to the examiner regarding her history and credentials. (Petitioner's Brief at 8-10.) Collaso further relies upon the fact that the Board, in its October 20, 2011 order resolving the Department's motion to the extent it sought to deem facts admitted and for a default judgment, concluded that it did not "believe that the facts as alleged in the [motion] rise to the level of establishing that a medical condition may exist that would render [Collaso] unable to practice with reasonable skill and safety." (R.R. at 50a.) As we noted above, when the Board expressed that opinion, it did so based upon its view that the portion of the motion seeking to compel an indefinite suspension of Collaso's license due to her failure to comply was insufficient, because that motion did not specifically indicate whether the examination would address potential drug addiction or mental incompetence. Although the Board's order appears inconsistent in some respects, the Board did

---

**(continued…)**

support of her imprecise challenge to factual findings and legal conclusions, we are bound by the Board's factual findings.

14

affirmatively find that Collaso failed to comply with the initial July 2011 order, directing her to submit her medical records to the examiner.

Although Collaso does assert that the Board's comment supports her claim that she complied with the initial July 2011 order to submit to an examination, the thrust of Collaso's argument is that she complied with the direction in part, by attending the examinations. Collaso, however, does not contest that she failed to provide the examiner with her medical records as required by the July 2011 order. The July 2011 order also directed Collaso to answer questions the examiner posed to her. (R.R. at 34a.) Collaso makes no claim that she did answer all of the examiner's questions. Thus, the record appears to contain substantial evidence that supports the Board's findings that Collaso did not comply with the July 2011 order to submit to a mental and physical examination.

Based upon the Board's findings regarding Collaso's noncompliance, we conclude that the factual findings support the Board's conclusion that Collaso failed to comply with the Board's order, because her refusal to provide the records rendered the examiner's task of producing an accurate evaluation impossible.

## REMAINING ARGUMENTS

### Abuse of Discretion in Revoking Collaso's License

Collaso asserts generally throughout her brief that the Board abused its discretion in imposing the sanction of license revocation. Collaso contends that the penalty is too harsh for the conduct at issue. As the Department notes, however, the Board may impose sanctions to the extent authorized by the applicable law. *Slawek v. State Bd. of Med. Educ. and Licensure*, 586 A.2d 362, 365 (Pa. 1991). Collaso, relying upon our decision in *Ake v. State Board of Accountancy*, 974 A.2d 514 (Pa. Cmwlth.), *appeal denied*, 987 A.2d 162 (Pa.

15

2009), argues that the Board's revocation constitutes an abuse of discretion. In *Ake*, we concluded that the Board of Accountancy abused its discretion in revoking a certified public accountant's license, based upon a conviction for harassment in a different state. We reversed the Board's sanction, concluding "that where prior convictions do not in any way reflect upon the [licensee]'s present ability to properly discharge the responsibilities required by the position, the convictions cannot provide a basis for the revocation of a . . . license." *Ake*, 974 A.2d at 520. Rather, licensing agencies must consider "the nature of the offending conduct and its remoteness in time must be considered where an agency seeks to revoke a professional license on the basis of a conviction." *Id.* We conclude that *Ake* is distinguishable from this matter, because the Board correctly determined that Collaso's convictions reflected upon her ability to discharge the responsibilities of a social worker and the timing of convictions, as compared to our holding in *Ake*, is not remote to the Board's revocation action.

## Collateral Estoppel

Collaso also argues that the Board was collaterally estopped from considering the charges in the Order to Show Cause based upon the earlier proceeding involving the ITS. The Department contends that Collaso waived this issue by failing to present it in her petition for review. Our Supreme Court amended Pa. R.A.P. 1513(d) to provide that, when a party fails to raise an issue in a petition for review, but presents sufficient argument in a brief to enable this Court to address the issue, such an omission is not grounds to find waiver. *Winchilla v. Workers' Comp. Appeal Bd. (Nexstar Broad.)*, 126 A.3d 364, 368 (Pa. Cmwlth.), *appeal denied*, 130 A.3d 1293 (Pa. 2015). The Department is correct, however, in relying upon waiver, because it appears that Collaso did not raise the

16

issue before the Board. Pa. R.A.P. 1551(a); *Laundry Owners Mut. Liab. Ins. Assn. v. Ins. Comm'r of Pennsylvania*, 91 A.3d 747, 753 (Pa. Cmwlth. 2014) (issue waived where party fails to raise it before governmental unit). Therefore, we agree with the Department that Collaso waived this issue.

Accordingly, we conclude that Collaso has not established any grounds for reversal of the Board's decision, and, therefore, we will affirm the Board's order.[14]

_____
P. KEVIN BROBSON, Judge

_____

[14] Collaso mentions CHRIA, which was the basis of Count Two of the Order to Show Cause, only in passing. Although we note the Court's recent holdings that suggest that CHRIA may only be applicable in the context of a licensee's criminal conviction and professional disciplinary proceedings where a licensing board's statutory provisions are silent as to the authority of a board to impose a sanction for a criminal conviction, *see Garner v. State Board of Optometry*, 97 A.3d 437 (Pa. Cmwlth. 2014), *appeal denied*, 112 A.3d 655 (Pa. 2015), Collaso has not adequately challenged the Board's conclusion that CHRIA provides sufficient legal grounds independently to impose a sanction based upon her convictions. Consequently, we will not proceed to consider whether the Board erred in concluding it could do so.

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jane C. Collaso, : 
               Petitioner : 
               : 
          v. :   No. 1118 C.D. 2015
               : 
Bureau of Professional and : 
Occupational Affairs, State : 
Board of Social Workers, : 
Marriage and Family Therapists : 
and Professional Counselors, : 
               Respondent : 

## **O R D E R**

AND NOW, this 1st day of July, 2016, the order of the Bureau of Professional and Occupational Affairs, State Board of Social Workers, Marriage and Family Therapists and Professional Counselors is AFFIRMED.

 

 

                                                 _____
                                                P. KEVIN BROBSON, Judge